UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **KATHLEEN JENNINGS** | * | **CIVIL ACTION NO. 3:08-cv-0304** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **MARIANA LEGER, WARDEN** | * | **MAG. JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

  Kathleen Jennings, originally acting *pro se* but now represented by attorney Douglas Harville, filed the instant petition for writ of *habeas corpus* (28 U.S.C. § 2254) on February 29, 2008. Presently an inmate in the custody of Louisiana's Department of Public Safety and Corrections, petitioner attacks her 2003 conviction for second degree murder in the Fourth Judicial District Court, Morehouse Parish. This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DENIED**.[1]

BACKGROUND

  On April 5, 2001, the Morehouse Parish Grand Jury indicted and charged petitioner with

---

[1] This matter was dismissed on initial review as time-barred by the provisions of 28 U.S.C. § 2244(d)(1)(A) as interpreted by then-controlling Fifth Circuit jurisprudence. *Salinas v. Dretke*, 354 F.3d 425 (5th Cir. 2004), *cert. denied*, 541 U.S. 1032 (2004). See Doc. # 4, Doc. # 7. In *Salinas*, the Court concluded that an out-of-time appeal could not restore any of the period of limitations that had expired prior to its filing. *Salinas* was overruled by *Jimenez v. Quarterman*, 555 U.S. 113 (2009), and, on December 23, 2010, the Fifth Circuit, relying on *Jimenez*, reversed this Court's judgment and remanded the matter for further review. *See Jennings v. Rogers*, 405 Fed. App'x 906 (5th Cir. 2010); Doc. # 29.

1

the first degree murder of Joseph Ray, a clerk at Thrifty Liquor, 1220 South Washington Street, in Bastrop, Louisiana.  Doc. # 1-3, p. 8; Doc. # 40, pp. 24-25.  On May 6, 2003, the indictment was amended to charge second degree murder.  Doc. # 1-3, p. 8.  Petitioner's jury trial concluded on May 13, 2003, and petitioner was found guilty as charged.  *Id.*  On July 29, 2003, petitioner was sentenced to life without benefit of parole.  Doc. # 40, p. 20.

On June 16, 2004, petitioner filed a motion for an out-of-time appeal which was granted on June 18, 2004.  *Id.* at pp. 147-49.  Appellate counsel was appointed and in due course, counsel filed a brief raising a single assignment of error concerning the admissibility of petitioner's inculpatory statements at trial.  Doc. # 35-1, p. 69-81.  On March 2, 2005, the Louisiana Second Circuit Court of Appeal affirmed petitioner's conviction.  *State of Louisiana v. Kathleen Jennings*, 39,543 (La. App. 2 Cir. 3/2/05); 895 So. 2d 767.  On March 23, 2005, petitioner filed a *pro se* application for writs in the Louisiana Supreme Court.  Doc. # 35-2, pp. 22-33.  On December 16, 2005, the Supreme Court denied writs.  *State of Louisiana v. Kathleen Jennings*, 2005-1239 (La. 12/16/05); 917 So. 2d 1107.  *See also* doc. # 35-2, p. 36.  Petitioner did not seek further review in the United States Supreme Court.  Doc. # 1, ¶6(d).

On September 20, 2006, petitioner filed a *pro se* application for post-conviction relief in the Fourth Judicial District Court raising claims of ineffective assistance of counsel, failure of the State to reveal "biased, impeachment and exculpatory material," and denial of the right to judicial review based on an incomplete court record.  Doc. # 1-3, pp. 70-108.

On January 7, 2007, the Fourth Judicial District Court denied relief.  Doc. # 1-3, pp. 61-65.  Petitioner timely applied for writs of review in the Second Circuit Court of Appeal.  On March 8, 2007, the Second Circuit denied writs.  Doc. # 1-3, p. 30.  On March 27, 2007,

2

petitioner applied for writs to the Louisiana Supreme Court.  Doc. # 1-3, p. 2.  On January 25, 2008, the Supreme Court denied writs.  *State of Louisiana ex rel. Kathleen Jennings v. State of Louisiana*, 07-0807 (La. 1/25/08); 973 So. 2d 747.

Petitioner filed the instant petition on February 29, 2008, arguing four claims for relief:

(1) Trial counsel rendered ineffective assistance as guaranteed by the Sixth and Fourteenth Amendments;

(2) The State did not reveal all exculpatory and "biased" material that should have been provided to the defense;

(3) Petitioner was denied her right to judicial review, due process and appropriate punishment due to the incompleteness of her case; and

(4) The trial court erred when it admitted "multiple inculpatory statements" made by the petitioner, when "it was apparent that she did not fully understand her right to an attorney."

Doc. # 1, pp. 2-3.

## LAW AND ANALYSIS

**I. Standard of Review**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, ––– U.S. –––, 131 S. Ct. 1388, 1398 (2011).  An inmate must show that the adjudication of the claim in state court:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e).

## II. Petitioner's Claims

### A. Ineffective Assistance of Counsel

#### 1. Standard

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). If the defendant does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v.*

*Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).

To prove deficient performance, the defendant must demonstrate that counsel's actions "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. There is a strong presumption that counsel performed adequately and exercised reasonable professional judgment. *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006). Furthermore, "a conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Id.* (quoting *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004).

To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" and is less than a preponderance of the evidence. *Id.* at 693-94.

  **2.**  **Petitioner's Claims**

Petitioner has two complaints stemming from the alleged ineffective assistance of her counsel at trial, Mr. Louis G. Scott and Mr. Roland Charles. Nowhere in her petition does she articulate precisely how the alleged errors of her attorneys fell below an objective standard of reasonableness, or how petitioner was prejudiced as a result. *See Strickland*, 466 U.S. at 686-87. Nevertheless, the undersigned will consider each claim in turn.

First, petitioner alleges that her trial counsel erred by failing to file a motion to suppress statements made by petitioner while at the police station, prior to her representation by either Attorney Scott or Attorney Charles. Doc. # 35, p. 18. Petitioner claims that "it is clear given her

behavior after the incident and her non-responsiveness to jail officials that she clearly was in no state of mind to be answering questions or giving statements." *Id.* at p. 19.  Petitioner also contends that her attorneys "should have retained an expert to testify that [petitioner] exhibits signs of dissociative amnesia stemming from chronic posttraumatic stress disorder." *Id.* at p. 19. Petitioner similarly claims that an appropriate "trial plan" would have included an expert witness to testify that petitioner was "psychotic, schizophrenic, delusional or prone to hallucinations, or otherwise suffering from a mental illness." Doc. # 35, p. 19.  Such testimony, petitioner implies, would have led to the suppression of her statements to the police.

      However, despite petitioner's assertions, her attorneys worked diligently to introduce evidence of her allegedly impaired mental state.  First, a Sanity Hearing was held prior to trial at which medical professionals testified as to the mental state of petitioner.  Nurse Geraldine Goodson, who performed an initial examination of petitioner at the Morehouse Parish Jail, testified that petitioner "had a very flat effect. Almost like . . . well it's expressionless, very calm, expressionless, non-changing answers, questions as little communication as possible, usually with one word." Doc. # 40, p. 97.  Dr. Frank Weinholt testified that petitioner "might have had a post-traumatic stress type of condition." Doc. # 40, p. 106.  He also testified that she reported feelings of depression, anxiety, memory loss, and being in a "state of shock." *Id.* at pp. 108-14.

      Furthermore, petitioner's trial counsel retained an expert to testify as to petitioner's mental state, including her alleged memory loss due to post-traumatic stress disorder.  At trial, Attorney Scott questioned defense expert Dr. Richard Williams on this very subject. Doc. # 40-2, pp. 470-77.  Dr. Williams testified that petitioner suffered from post-traumatic stress disorder, depression, hypertension, and that her level of functioning was significantly impaired. *Id.* at p.

6

470. He also testified that post-traumatic stress disorder can begin immediately after the "stressing event," that the condition can cause memory loss, and that petitioner reported experiencing such memory loss. *Id.* at pp. 472-77.

Finally, trial was interrupted at one point for a hearing to determine whether the statements at issue were free and voluntary. *See* doc. # 40-1, p. 114-181. Various witnesses testified at the hearing as to petitioner's mental condition at the time she gave the statements, as well as her understanding of the rights she was relinquishing. Following the hearing, the court ruled the statements admissible. *Id.* at 175-78. Considering the large amount of deference granted under *Strickland* to counsel's decisions on trial strategy, the undersigned cannot find the attorneys' actions in this regard objectively unreasonable. Any motion to suppress filed by counsel would have been meritless because defense counsel did in fact challenge the admissibility of the statements; the court held a hearing on the issue; and the statements were found to be admissible. Therefore, it is recommended that this claim be **DENIED**.

Petitioner's second ineffective assistance of counsel claim is that Attorney Scott and Attorney Charles "denied [petitioner] her constitutional rights" by failing to "adequately prepare, investigate, and present evidence to prove that Dr. George McCormick . . . presented perjured testimony during [the] trial." Doc. # 35, p. 21. Petitioner notes investigations into the office of the former Caddo Parish Coroner, Dr. McCormick, who died in 2005. *Id.*; *see* doc. # 35-2 at pp. 48-61 (newspaper clippings detailing Dr. McCormick's death and the subsequent investigation into the coroner's office); *see also* Robert D. Felder, *A Coroner System in Crisis: The Scandals and Struggles Plaguing Louisiana Death Investigation*, 69 La. L. Rev. 627, 629-30 (2009) (detailing the routine practices of Dr. McCormick). Petitioner also points to the testimony at

7

another trial of Lisa Hayes, former Investigator for Dr. McCormick, who admitted to performing hundreds of autopsies over a seven-year period, although she was not a licensed physician. *See* Felder, *supra* at 629. Ms. Hayes further admitted to signing Dr. McCormick's name to autopsies that she had performed. *Id.*

Petitioner argues that her attorneys somehow knew about the practices in Dr. McCormick's office, and that they therefore should have "investigated the actual determination of Joseph Ray's cause of death, as well as the procedures and protocols used in determining his death." Doc. # 35, pp. 22-23. However, petitioner fails to explain why her attorneys should have known of Dr. McCormick's practices or the alleged perjury at the time of trial. The investigation apparently did not take place until after Dr. McCormick's death in September of 2005, over two years after the conclusion of petitioner's trial. *See* Doc. # 35-2 at pp. 48-61.

In addition, petitioner states that she does *not* dispute that the victim's death resulted from a gunshot wound. *Id.* at p. 24. As petitioner concedes that the cause of death was a gunshot wound, it does not follow that her attorneys should have conducted further investigation into the cause of death. Even if counsel could have raised questions about who performed the autopsy or whether it included conflicting statements, there is no objectively reasonable basis to believe that it would have changed the outcome of petitioner's trial. It is therefore recommended that petitioner's claim of ineffective assistance of counsel be **DENIED**.

    **B.**    **Failure of the State to Reveal Exculpatory Evidence**

Petitioner next argues that the State failed to provide her with "biased, impeachment, and exculpatory material," resulting in a violation of due process. *See Brady v. Maryland*, 373 U.S. 83 (1963) (addressing the suppression of favorable, material evidence). A *Brady* prosecutorial

misconduct claim contains the following three components: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999). A *Brady* claim may arise when "the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury." *United States v. Agurs*, 427 U.S. 97, 103 (1976).

Petitioner again describes at length the practices of Dr. McCormick and Ms. Hayes, and claims that "[t]he State was required to turn this evidence over to the defense counsels[.]" She essentially suggests that the State knew that Ms. Hayes, not Dr. McCormick, performed the autopsy in this case. Petitioner claims that the State's failure to disclose this evidence left her "without adequate information to impeach the State's witness or put before the jury [that] which was relevant to [petitioner's] defense." Doc. # 35, p. 27.

As a preliminary matter, petitioner has produced no evidence whatsoever that anyone other than Dr. McCormick performed the autopsy in this case.[2] To the extent that petitioner argues the State should have disclosed information regarding other cases, petitioner cannot satisfy the elements of a *Brady* claim. Petitioner has not provided the court any reason to believe that the State was ever in possession of this information at the time of trial. As stated above, the fraudulent activities at the coroner's office did not become public until two years after

---

[2] The undersigned recognizes that petitioner seeks an evidentiary hearing before this court in order to question Ms. Hayes on this matter. However, the availability of such a hearing is foreclosed by the Supreme Court's recent holding in *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (limiting review under § 2254(d)(1) to the record that was before the state court). S*ee infra* Section III.

petitioner's trial, and there is no reason to think the prosecution was aware of them before that time.

Even if petitioner could point to some evidence that was suppressed by the State, she would be unable to show any prejudice resulting from the suppression. Again, the cause of death was undisputed; both parties agreed that the victim was killed by a shotgun blast to his back. Petitioner presents no other reason why the identity of the person who performed the autopsy would be relevant; thus, petitioner can show no "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). It is therefore recommended that petitioner's claim that the state failed to disclose exculpatory evidence be **DENIED**.

### C. Incompleteness of the Record

In her third claim, petitioner asserts that she was denied her constitutional rights to "judicial review, due process and appropriate punishment due to the incompleteness of the record in her case." Doc. # 35, p. 31.[3] Petitioner refers to the requirements of Louisiana Constitution Article 1, Section 19, which provides that "[n]o person shall be subjected to imprisonment . . . without the right of judicial review based upon a complete record of all evidence upon which the

---

[3] Petitioner further asserts that her trial should have been moved to another jurisdiction, "due to the size of [the] community, and given the fact[] that the persons involved were closely knit[] in [the] rural community . . . ." Doc. # 35, p. 31. She also claims that "[t]he trial judge . . . had represented the victim's father . . . in a previous matter, which should have resulted in [his] recusal [in] this matter." These facts were not presented to the state court. Thus, to the extent these assertions raise additional factual bases for petitioner's claim, the undersigned is unable to entertain them due to the Supreme Court's recent decision in *Cullen v. Pinholster*. *See infra* Section III.

judgment is based." La. Const. Art. 1, § 19.  She also cites the Louisiana Supreme Court's decision in *State v. Ford*, wherein the court found that "[w]ithout a complete record from which a transcript for appeal may be prepared, a defendant's right of appellate review is rendered meaningless."  *State of Louisiana v. Ford*, 338 So. 2d 107, 110 (La. 1976).

However, as pointed out by the state court's ruling on post-conviction relief (doc. # 1-3, p. 64), this is not a case where portions of the trial were not recorded.  Instead, the state court denied petitioner's request that certain portions be transcribed and provided to her at no cost. The court did so because she failed to "make any showing of particularized need" for these items. Doc. # 35-2, p. 59.  Because of this fact, the state habeas court found that petitioner failed to provide the requisite evidentiary support for her claim.  Doc. # 1-3, pp. 64-65.  As the undersigned cannot say that the state court's decision was unreasonable, it is recommended that this claim be **DENIED**.

        **D.**      **Erroneous Admission of Inculpatory Statements at Trial**

In petitioner's final claim, she alleges that "the trial court erred when it admitted for use at trial the multiple inculpatory statements made by Jennings when it was apparent she did not fully understand her right to an attorney."  Doc. # 35, p. 34.  Petitioner contends that her statements were involuntary in that they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).  She argues that her mental state at the time she gave the statements was impaired, and that she was under the impression that only a recorded statement could be used against her.  Doc. # 1-2, pp. 31-32.

The admissibility of a confession or incriminating statement is a mixed question of law and fact.  *Miller v. Fenton*, 474 U.S. 104, 112 (1985).  Thus, the undersigned must consider

11

whether the state courts' denial of relief was contrary to, or an unreasonable application of, Supreme Court law. *See* 28 U.S.C. § 2254(d)(1).

The determination of the voluntariness of a confession or incriminating statement requires the federal court to consider the "totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973). A federal court entertaining a collateral challenge to the voluntariness of a statement is obliged to grant a presumption of correctness to state-court findings of fact if fairly supported in the record. *See Miller*, 474 U.S. at 117. However, the court is authorized to exercise *de novo* review over the ultimate conclusion of whether, under the totality of the circumstances, the statement was "voluntary." *See Carter v. Johnson*, 131 F.3d 452, 461-62 (5th Cir. 1997) (citing several sources). Although mental state or condition may be a significant factor in the voluntariness determination, "this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'" *Id.* at 462 (citing *Colorado v. Connelly*, 479 U.S. 157, 164 (1986)).

The question whether an accused has voluntarily and knowingly waived his Fifth Amendment privilege against self-incrimination consists of two separate inquiries. *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Soffar v. Cockrell*, 300 F.3d 588, 592 (5th Cir. 2002). First, the relinquishment of the right must have been voluntary in that it was not the product of intimidation, coercion, or deception. *Moran*, 475 U.S. at 421. Second, the waiver must have been made with a full awareness of the nature of the right being waived. *Id.* A written waiver "is usually strong proof of the validity of that waiver, but is not inevitably either necessary or

sufficient to establish waiver." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

Here, it was petitioner who initiated contact with the Morehouse Parish Sheriff's Office when she contacted Detective Libby Brixley within hours of the murder. *State of Louisiana v. Kathleen Jennings*, 39,543 (La. App. 2 Cir. 3/2/05); 895 So. 2d 767, 769. During her time at the Sheriff's Office, petitioner signed three separate forms detailing her rights. Upon her arrival at the police station, Detective John Smith advised petitioner of her *Miranda* rights and read to her a "Warning Waiver Form," which petitioner then signed at 2:19 in the afternoon. *Id.* The signed form states that petitioner was read her rights, understood her rights, wished to make a voluntary statement, did not want an attorney, and was not influenced by force, threats, or promises. *Id.* Prior to a second interview, which took place later in the day, petitioner was again read her *Miranda* rights. *Id.* at 770. Sergeant Mike Tubbs of the Morehouse Parish Sheriff's Department reviewed another warning and waiver form with petitioner, who again signed the form at 4:55 p.m. *Id.* Finally, before a third interview in the evening, Detective Smith again read petitioner her *Miranda* rights, as well as the warning and waiver form. Petitioner initialed each of the *Miranda* rights and signed the waiver at 8:30 p.m. *Id.*

Furthermore, a hearing was held at trial to determine whether the statements at issue were free and voluntary. *See* doc. # 40-1, p. 114-181. Various witnesses testified at the hearing as to the mental state of petitioner at the time she gave the statements, the nature of the officers' interrogation, and the circumstances under which she waived her *Miranda* rights. Following the hearing, the court ruled the statements admissible. *Id.* at 175-78.

On appeal, the Louisiana Second Circuit likewise determined that petitioner understood and voluntarily waived her rights. The court found no basis for petitioner's assertion that her

mental state was impaired when she gave the statements to the police. *Id.* at 772-73. The court also found no basis in her contention that she thought an unrecorded statement could not be used against her. *Id.* at 773.

These factual findings are entitled to the presumption of correctness under 28 U.S.C. § 2254(e)(1). To overcome this presumption, petitioner must rebut these factual findings and show by clear and convincing evidence that her statements were involuntary. *See id.* She has failed to do so here; thus, it is recommended that this claim be **DENIED**.

### III. Request for an Evidentiary Hearing

Under Rule 8(a) of the *habeas* Court Rules, "the judge must review the answer [and] any transcripts and records of state proceedings . . . to determine whether an evidentiary hearing is warranted." Section 2254(e)(2) delineates the narrow circumstances under which an evidentiary hearing may be held in federal court:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

The Supreme Court recently held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131

S. Ct. 1388, 1398 (2011); *see also McCamey v. Epps*, ––– F.3d –––, 2011 WL 4445998, at *5 (5th Cir. Sept. 27, 2011) (holding that in light of *Pinholster*, the district court erred in allowing an evidentiary hearing; "the district court's review should have been . . . confined to the record in the state court"). Nevertheless, the Court explained in *Pinholster* that its ruling did not render § 2254(e)(2) superfluous. "Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief . . . . [Section] 2254(e)(2) still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court." *Pinholster*, 131 S. Ct. at 1401.

Petitioner's claims were all adjudicated on the merits in state court. Thus, an evidentiary hearing is unavailable, as the undersigned's review under § 2254(d)(1) is limited to the record before the state court.

## CONCLUSION

For the reasons stated above,

**IT IS RECOMMENDED** that the petition for *habeas corpus* filed by Kathleen Jennings [doc. # 1] be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days**

**following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** See 28 U.S.C. §2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 31st day of October, 2011.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE